JANE DOE,

      Plaintiff,           :

v.                        Case No. 3:25-cv-836
                                 Chief Judge Sarah D. Morrison
                                 Magistrate Judge Chelsey M.
CONNOR LEWIS CAMPBELL, *et*       Vascura
*al.*,                    :

      Defendants.

## <u>OPINION AND ORDER</u>

This case stems from events transpiring after the end of Jane Doe's[1] romantic relationship with Connor Lewis Campbell. During their relationship, Mr. Campbell took intimate photographs of Ms. Doe with her consent. He later began a relationship with Kaiya Gabriel.

One year after Ms. Doe's relationship with Mr. Campbell ended, Ms. Gabriel sent one of Ms. Doe's intimate photographs to Ms. Doe via email. Ms. Doe suspects that Ms. Gabriel, who was a nurse at Vanderbilt University Medical Center, found her email address by reviewing Ms. Doe's medical records. (Compl., ECF No. 1, ¶¶ 28, 30.) So, Ms. Doe contacted Vanderbilt. Vanderbilt investigated Ms. Doe's complaint and informed her that Ms. Gabriel viewed her information multiple times

---

[1] Jane Doe is a pseudonym to protect the Plaintiff's privacy. (*See* ECF No. 17.)

in October 2024. (Answer, ECF No. 18, PAGEID # 54; Compl. ¶ 43.) Vanderbilt did not initially terminate Ms. Gabriel following its investigation. (Answer, PAGEID # 64.) However, Ms. Gabriel alleges that Ms. Doe again contacted Vanderbilt in February 2025 and "made false and defamatory statements about Ms. Gabriel, misrepresentations regarding Ms. Gabriel, and threats of litigation in an effort to cause Vanderbilt to terminate its employment contract with Ms. Gabriel." (*Id.*, PAGEID # 65.) One month later – and four months after the investigation's conclusion – Vanderbilt terminated Ms. Gabriel. (*Id.*, PAGEID # 65.)

Meanwhile, Ms. Doe sought an order of protection against Ms. Gabriel in Tennessee state court. Ms. Doe alleges that, at the order of protection hearing, Ms. Gabriel disclosed the photograph she emailed to Ms. Doe "to a full courtroom." (Compl. ¶ 37.) According to Ms. Gabriel, she disclosed the image during the protection hearing as part of her defense and at the request of Ms. Doe's counsel. (Answer, PAGEID # 62.)

In July 2025, Ms. Doe initiated this action against Ms. Gabriel and Mr. Campbell related to their use and disclosure of her intimate photographs. Ms. Gabriel filed an Answer in October 2025, wherein she asserted a counterclaim against Ms. Doe for tortious interference with a business contract under Tennessee law based on Ms. Doe's alleged role in her termination from Vanderbilt.

Ms. Doe answered Ms. Gabriel's counterclaim and subsequently filed a Motion for Judgment on the Pleadings (MJOP, ECF No. 22). She argues that Ms. Gabriel's counterclaim fails to state a claim for relief and violates Tennessee's anti-

2

SLAPP statute, the Tennessee Public Participation Act ("TPPA"). Accordingly, she asks the Court to grant judgment in her favor on Ms. Gabriel's counterclaim and award her the remedies available under the TPPA (sanctions, costs, and attorney's fees).

The day before the deadline to respond to Ms. Doe's MJOP, Ms. Gabriel moved to voluntarily dismiss her counterclaim without prejudice (Mot., ECF No. 26). She stated that her "financial resources are limited, particularly in light of the loss of her employment" and that, "after evaluating the time, expense, and resources required to litigate the anti-SLAPP issue, the counterclaim," and Ms. Doe's original claims, she decided to focus her resources solely on defending against Ms. Doe's claims. (*See* Mot., PAGEID # 142.) For a similar reason, she contemporaneously moved for an extension of time to respond to Ms. Doe's MJOP until after the Court ruled on her Motion for Voluntary Dismissal. (*See* ECF No. 27.) Ms. Doe opposes both Motions. (*See* ECF Nos. 28, 30.)

After those Motions were fully briefed, Ms. Doe filed a Supplemental Brief in support of her MJOP (ECF No. 51). She argues that Ms. Gabriel's deposition testimony demonstrates that Ms. Gabriel filed a "facially frivolous counterclaim" on which she "never intended to prevail" for strategic reasons. (*Id.*, PAGEID # 324.) Specifically, Ms. Gabriel testified that she did not "necessarily" want to file the counterclaim and that she did not "know much about the legality or the chances of winning" on it, but that she was comfortable filing it because her counsel "recommended that it was a good strategy." (ECF No. 51-1, PAGEID # 333–34.)

Ms. Gabriel responded to Ms. Doe's Supplemental Brief, arguing that (1) her tortious interference claim alleged a sufficient factual basis to withstand Ms. Doe's MJOP; and (2) Ms. Gabriel's testimony only demonstrates that she trusted her counsel's advice regarding the claim. (ECF No. 52, PAGEID # 341–42, 344.) Ms. Doe moves to strike Ms. Gabriel's Response to her Supplemental Brief. (ECF No. 53.)

Thus, this matter is before the Court on Ms. Gabriel's Motion for Voluntary Dismissal (ECF No. 26) and Ms. Doe's MJOP (ECF No. 22) and Motion to Strike (ECF No. 53).

## I.     ANALYSIS

Because the Court's ruling on Ms. Gabriel's Motion for Voluntary Dismissal is dispositive of the parties' pending motions, the Court begins and ends its analysis with that Motion.

### A.     Legal Standard

Voluntary dismissal of a counterclaim is governed by Federal Rule of Civil Procedure 41(a). Fed. R. Civ. P. 41(c). Before the opposing party files an answer or motion for summary judgment, a party may voluntarily dismiss an action unilaterally. Fed. R. Civ. P. 41(a)(1)(A)(i). If the opposing party files an answer and does not consent to dismissal, a plaintiff can only dismiss her action "by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Unless otherwise stated, dismissal under Rule 41(a)(2) is without prejudice. *Id.*

Whether to grant a voluntary dismissal under Rule 41(a)(2) is within the court's sound discretion. *Grover by Grover v. Eli Lilly and Co.*, 33 F.3d 716, 718 (6th Cir. 1994). "The primary purpose of Rule 41(a)(2)'s requirement of a court order is to

4

protect the nonmovant from unfair treatment." *Walther v. Florida Tile, Inc.*, 776 F. App'x 310, 315 (6th Cir. 2019). Generally, unfair treatment will only be found when the nonmovant would suffer "plain legal prejudice as result of dismissal without prejudice, as opposed to facing the mere prospect of a second lawsuit." *Id.* (citation omitted). Factors relevant to evaluating plain legal prejudice include the parties' "effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the [movant] in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." *Grover*, 33 F.3d at 718. These factors "are neither exhaustive nor conclusive." *Walther*, 776 F. App'x at 315.

### B. *Grover* Factors

The Court finds that the *Grover* factors weigh in favor of dismissing Ms. Gabriel's counterclaim without prejudice.

### 1. Expense and Effort in Litigation

There is no record of extensive effort and expense by the parties at this early stage of litigation. Indeed, the parties had not initiated discovery at the time Ms. Gabriel filed her Motion. (Mot., PAGEID # 151.) Although the parties have since engaged in some discovery, four months remain to complete discovery and no trial date has been set. (*See* ECF No. 43.); *see also Walther*, 776 F. App'x at 318 (litigation history not "extensive" where parties engaged in "limited discovery" and 12(c) briefing before the plaintiff's Rule 41(a)(2) motion). True, Ms. Doe incurred some expense litigating against Ms. Gabriel's counterclaim, but any efforts in discovery and briefing could be repurposed if Ms. Gabriel refiled her tortious

5

interference claim. *See Can IV Packard Square, LLC v. Schubiner*, 768 F. App'x 308, 312 (6th Cir. 2019) ("Nothing in the brief life of the case affects [the defendant's] legal rights or his ability to mount a defense if the lawsuit is refiled."). Ms. Doe provides no reason to believe that litigating Ms. Gabriel's counterclaim has involved extensive or extraordinary expense that would cause her to suffer plain legal prejudice from dismissal without prejudice.

### 2. Excessive Delay

Ms. Gabriel did not exhibit excessive delay in prosecuting her counterclaim. The *Grover* factors weigh against dismissal when the parties have been "in litigation for a considerable time before the motion to voluntarily dismiss was filed" and have already expended significant resources litigating the claim. *See Grover*, 33. F.3d at 718–19. Here, Ms. Gabriel moved to voluntarily dismiss her counterclaim two months after filing it, before the deadline to respond to Ms. Doe's MJOP and before the parties began discovery. The record does not evince dilatory conduct by Ms. Doe in litigating and seeking to dismiss her counterclaim.

### 3. Explanation for Dismissal

Ms. Gabriel provided a sufficient basis for dismissing her counterclaim. She states that she prefers to direct her limited financial resources to defending against Ms. Doe's claims and not pursue the "significant costs associated with litigating against" Ms. Doe's MJOP. (Mot., PAGEID ## 145–46.) Determining that the costs of litigation outweigh the benefits in continuing is a reasonable explanation for voluntarily dismissing a claim. *See Malibu Media, LLC v. Redacted*, 705 F. App'x

6

402, 408 (6th Cir. 2017) ("[A] plaintiff's cost-benefit analysis of pursuing further litigation may serve as a sufficient explanation of its dismissal.") (citing *Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*, 583 F.3d 948, 955 (6th Cir. 2009)).

Ms. Doe sees the basis for Ms. Gabriel's dismissal request differently. According to Ms. Doe, Ms. Gabriel seeks dismissal without prejudice to avoid an adverse ruling. (Resp., PAGEID ## 170–72.) She argues that the Court can infer Ms. Gabriel's tacit motive from (1) the timing of Ms. Gabriel's request for dismissal; (2) the "inarguably meritorious" arguments in Ms. Doe's MJOP; and (3) the fact that Ms. Gabriel "has not even attempted to respond" to it. (*Id.*, PAGEID # 172.)

Ms. Doe has not convinced the Court that Ms. Gabriel's purported ulterior motive better explains her reason for dismissal. The fact that Ms. Gabriel moved to dismiss her claims before responding to Ms. Doe's MJOP equally supports Ms. Gabriel's explanation for dismissal – saving costs. And Ms. Gabriel did not respond to the MJOP, presumably, because she moved for an extension of time for a similar reason. (*See* ECF No. 27, PAGEID # 150.) This course of proceeding does not undermine the explanation Ms. Gabriel provides.

Moreover, Ms. Doe's position that her MJOP is "inarguably meritorious" is premature. Courts have denied dismissal without prejudice when "the law clearly dictates a result" for the nonmovant, e.g., when a controlling issue has been decided or the nonmovant has an absolute legal defense, such as a statute of limitations. *See Grover*, 33 F.3d at 719 (collecting cases). Here, Ms. Doe has not raised a plainly applicable legal defense to Ms. Gabriel's tortious interference claim. Instead, she

argues that Ms. Gabriel insufficiently pleaded it. (MJOP, PAGEID ## 91–92.) Unsurprisingly, Ms. Gabriel disagrees. (*See* Mot., PAGEID # 142.) Whatever the merits of Ms. Doe's argument – which the Court does not reach – it is not the kind of argument where the law "clearly dictates" a result in her favor. *Cf. Rosenthal v. Bridgestone/Firestone, Inc.*, 217 F. App'x 498, 500–01 (6th Cir. 2007) (law "did not clearly dictate a result" in the defendant's favor where the district court had yet to rule on their summary judgment motion, even though the court "expressed its tentative opinion" that defendants' argument would succeed). The record does not convince the Court that Ms. Gabriel sought dismissal without prejudice solely to avoid an adverse judgment.

### 4. Whether Summary Judgment Has Been Filed

Neither party has moved for summary judgment.[2] Ms. Doe's pending MJOP, if granted, would be dispositive of Ms. Gabriel's counterclaim, but that fact alone does not weigh against granting dismissal without prejudice. "The *Grover* factors are not an exclusive or mandatory list that must be robotically followed," so the fact

---

[2] Ms. Doe's Supplemental Brief in support of her MJOP includes excerpts from Ms. Gabriel's deposition for the Court's consideration. (*See* ECF No. 51.) Ms. Gabriel argues that Ms. Doe's subsequent addition of "extrinsic evidence is sufficient to convert [her] motion into a Motion for Summary Judgment." (ECF No. 52, PAGEID # 337.) But the Court need only convert a 12(c) motion to a motion for summary judgment if it considers matters outside the pleadings when deciding the motion. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Because the Court does not reach the merits of Ms. Doe's MJOP, its conversion to a Rule 56 motion is speculative and does not factor into the Court's analysis of Ms. Gabriel's Motion.

that "a dispositive motion is pending is merely a relevant factor under *Grover*; it is not dispositive." *Walther*, 776 F. App'x at 316 (citation modified); *see also Malibu Media, LLC*, 705 F. App'x at 409 ("The existence of a pending motion for summary judgment is not dispositive."). Ms. Doe identifies no legal prejudice that would come from dismissal without prejudice at this early stage based on her filing an MJOP.

### 5. Bad Faith and Abuse

Ms. Doe also argues that the Court should deny Ms. Gabriel's dismissal request because her conduct demonstrates "abuse." (Resp., PAGEID ## 170–73.) The only basis for this assertion is the fact that Ms. Gabriel filed, then sought to dismiss, a tortious interference claim against her. (*Id.*, PAGEID # 172.) Although Ms. Doe characterizes this "abrupt change of course" as a "tried-and-true strategy of Tennessee SLAPP plaintiffs" (*see id.*), it is also a reasonable litigation strategy to avoid the additional expense that comes from dispositive-motion briefing. *See, e.g.*, *JDH Bldg. Group, LLC v. Bettman*, 1:25-cv-63, 2025 WL 1707657, at *3 (S.D. Ohio Jun. 18, 2025) ("JDH concedes that this litigation was strategic—that it brought the instant action 'in aid of arbitration' but made the 'tactical decision to abandon this relief,'—but it does not follow that the action was brought in bad faith. The fact that litigation conduct is strategic does not mean it is conducted in bad faith[.]") (Hopkins, J.). Even if the Court were inclined to interpret Ms. Gabriel's conduct as demonstrating gamesmanship or bad faith, that would not itself show plain legal prejudice to Ms. Doe. *See Rosenthal*, 217 F. App'x at 502 ("[E]ven if we accept defendants' contention that plaintiffs voluntarily dismissed this action in order to

9

gain a tactical advantage…, such a motivation does not necessarily constitute plain legal prejudice."). Thus, Ms. Doe's allegation of bad faith does not weigh against granting dismissal without prejudice.

*        *        *

Taken as a whole, the Court finds that Ms. Doe will not face legal prejudice from dismissing Ms. Gabriel's counterclaim without prejudice beyond the prospect of facing a second lawsuit. Ms. Gabriel's Motion for Voluntary Dismissal is **GRANTED**.

### C.        Conditions of Dismissal and Sanctions

Ms. Doe asks the Court to condition the dismissal of Ms. Gabriel's counterclaim on an award of Ms. Doe's attorney's fees. (Resp., PAGEID # 174.) Ms. Gabriel asks that the parties bear their own fees and costs associated with the dismissal. (Mot., PAGEID # 147.)

A dismissal under Rule 41(a)(2) "may be conditioned on whatever terms the district court deems necessary" to offset prejudice to the nonmovant from a dismissal without prejudice. *Bridgeport Music, Inc.*, 583 F.3d at 954. "Though defense costs are frequently awarded as a condition of a grant of voluntary dismissal, such costs are not mandatory." *Walther*, 776 F. App'x at 318 (citing *DWG Corp. v. Granada Invs.*, 962 F.2d 1201, 1202 (6th Cir. 1992)). There is "no fixed test" for evaluating whether to award costs and attorney's fees following a Rule 41(a)(2) dismissal. *Schubiner*, 768 F. App'x at 313. However, courts tasked with deciding whether to award fees generally consider whether the movant acted in good faith in bringing the action and whether the nonmovant incurred "extensive discovery costs"

10

and "extraordinary expenses" in defending the action. *See Walther*, 776 F. App'x at 318. (citation omitted).

Ms. Doe argues that an award of fees is appropriate because she "has already been forced to incur the full measure of expenses that are necessary" to defend against Ms. Gabriel's counterclaim, which Ms. Doe argues was filed in "bad faith." (Resp., PAGEID ## 175–76.) But Ms. Doe identifies only the expenses involved in routine motions practice and initial discovery, which do not amount to "extensive" or "extraordinary" expenses. *See Walther*, 776 F. App'x at 318–19 (limited discovery and 12(c) motion practice prior to 41(a)(2) motion could "hardly be characterized as 'extensive'"). Nor does the Court find on this record that Ms. Gabriel filed her counterclaim in bad faith.

An award of fees is not warranted here. Each party will bear their own fees and costs.

Similarly, Ms. Doe asks the Court to sanction Ms. Gabriel and her counsel because, she argues, Ms. Gabriel's counterclaim was frivolous and filed solely for strategic reasons. (*See* MJOP, PAGEID ## 103–05; Supp. Brief, PAGEID ## 327–28.) However, the record does not support Ms. Doe's contention. Filing a counterclaim for strategic reasons is not the same as filing a counterclaim in bad faith. *See JDH Bldg. Group, LLC*, 2025 WL 1707657 at *3. And the Court does not find that Ms. Gabriel acted in bad faith in filing, and promptly dismissing, her counterclaim. Sanctions are not appropriate here.

11

## II. CONCLUSION

For the reasons stated herein, Ms. Gabriel's Motion for Voluntary Dismissal (ECF No. 26) is **GRANTED**. Ms. Gabriel's claim for tortious interference with a business contract against Ms. Doe is **DISMISSED without prejudice**, and each party will bear their own costs. Ms. Doe's Motion for Judgment on the Pleadings (ECF No. 22) and Motion to Strike (ECF No. 53) and Ms. Gabriel's Motion for Extension of Time (ECF No. 27) are **DENIED as moot**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**